## CITY OF DENVER v. WILLIAMS.

DEFECTIVE SIDEWALKS — LIABILITY OF CITY.— The authority of the city council over streets and sidewalks being plenary, an action may be maintained against the city for injuries from defects therein, though the street commissioner is an elective officer charged by statute with the care and general superintending control over streets and sidewalks.

*Appeal from Superior Court of Denver.*

APPELLEE, A. M. Williams, while passing along the sidewalk on one of the streets of Denver, stepped upon

the cap covering a coal-hole, which, owing to its defective condition, turned under his weight and precipitated his body partially into the opening thus made. Without fault on his part he received severe and painful injuries, which, it is averred in the complaint, will render him a cripple for life.

He brought this action against the city to recover damages for the injuries thus occasioned, averring among other things that the city had knowledge of the dangerous condition of the cap in question. To the complaint a demurrer was filed, alleging that it stated no cause of action. This demurrer the court overruled, and the present appeal was taken, under the legislative act of 1885, from the order entered upon the demurrer.

In view of the legal question discussed in the opinion, it is unnecessary to give any further statement concerning the contents of the pleadings.

Mr. JAMES H. BROWN, for appellant.

Messrs. EDGAR CAYPLESS and H. E. LUTHE, for appellee.

CHIEF JUSTICE HELM delivered the opinion of the court.

The right of plaintiff below to damages for the injury suffered is not at present denied by counsel for appellant. His contention is that the liability, if such there be, rests upon the street commissioner, and not upon the city.

In *City of Denver v. Dunsmore*, 7 Colo. 328, this court, per Chief Justice BECK, held that "when municipal corporations are invested with exclusive authority and control over the streets and bridges within their corporate limits, with ample power of raising money for their construction, improvement and repair, a duty arises to the public, from the nature of the powers granted, to keep the avenues of travel within such jurisdiction in a rea-

sonably safe condition for the ordinary mode of use to which they are subjected, and a corresponding liability rests upon the corporation to respond in damages to those injured by a neglect to perform the duty." And the city was required to respond in damages, plaintiff having suffered injury by reason of a defective bridge on one of the public streets.

In *City of Denver v. Dean*, 10 Colo. 375, the doctrine of *City of Denver v. Dunsmore* was expressly re-affirmed and applied, though, as in the case at bar, the injury resulted from a defective cap over a coal-hole in the sidewalk. We there say: "It was the duty of the municipal authorities of Denver to exercise ordinary care in keeping the sidewalks free from defects and obstructions. * * * A failure to perform this duty might lay the foundation of municipal liability."

It is now asserted that, by virtue of a legislative provision adopted since the decision in *City of Denver v. Dunsmore*, the corporation is no longer liable for injuries like those here complained of. We are told that under the statute referred to, as already suggested, actions of this nature lie only against the street commissioner. If counsel's position were the true one, it would have been a strange oversight not to require of the street commissioner a bond or other security whereby plaintiff and others similarly situated might be protected. This officer may be impecunious, and wholly unable to respond in damages.

But we cannot consent to the correctness of counsel's view. It is true, as he contends, that the street commissioner is elected by the people, and apparently not subject to removal by the council. It is also true that he is charged with the care of streets, avenues, sidewalks, and the like; that he is to keep the same free from obstructions and defects, and to superintend the work of construction and repair. But the manner of his selection for office is not decisive of his *status* in connec-

tion with the municipal government; and the section upon which counsel relies simply designates his duties as a factor in the general administration of the city's affairs.

The different provisions of the charter relating to streets and sidewalks should be construed *in pari mate-ria*. Thus construing them, it is apparent that the superior and exclusive control of all the streets and sidewalks is still lodged in the municipal government, to be mainly exercised through its common council. That body has the power "to open, alter, abolish, widen, extend, establish, grade, pave or otherwise improve and keep in repair streets, avenues, alleys, sidewalks, and the like." The expense of such repairs, improvements and changes is to be provided for by the council in pursuance of statute. This body alone has authority to levy taxes for these among other municipal purposes. It also, in its annual appropriation bill, determines and sets apart the proportion of the general fund to be used by the department having these matters in charge. In the foregoing and in other respects the authority of the municipal government, through the city council, is as complete and plenary as it was when the opinion in *City of Denver v. Dunsmore* was announced.

The street commissioner, though an elective officer, is simply a subordinate agent or official, charged with the specific duties mentioned. He has certain limited powers in the employment of laborers and teams; but he cannot levy taxes, raise revenue, or, except under direction of the council, by ordinance or otherwise, disburse funds. If the council see fit to alter, repair or close a street or sidewalk, he cannot prevent the change from taking place. If that body requires the removal of certain encroachments or obstructions therefrom, he possesses no veto authority; and should he decline to obey the commands of the council in the premises, we discover nothing to prevent the execution thereof through

some other agency. He cannot even employ an assistant without written authority from the mayor; and only upon like authority can he hire teams and laborers when required in the discharge of his official duties. The intention of the legislature to subject his services to the general supervising control of the city council or its proper committee is too clear to admit of serious doubt.

It will therefore be seen that the case at bar does not come within the rule upon which counsel for appellant relies. This is not an instance "where the duties of an officer are prescribed by law, and are independent in their character, and he is not subject to the direction and control of the corporation as to the time, place or manner of their discharge;" under which circumstances it is said that "he is a public officer, and in no sense a servant or agent of the corporation, and the corporation is not liable for the manner in which he discharges his duties." Wood, Mast. & Serv. (2d ed.) sec. 458; 2 Dill. Mun. Corp. (3d ed.) sec. 974.

With the doctrine thus stated, and the numerous authorities cited in support thereof, we do not quarrel. Not being applicable, we simply pass them by without discussion.

If anything more than the foregoing were required to demonstrate the correctness of our position that it was not the legislative intent, when it provided for a street commissioner and imposed certain duties upon him, to relieve the city from liability for defects in the streets and sidewalks arising through negligence, it is found in another provision of the charter itself. Section 4, article 13, thereof reads as follows: "Before the city of Denver shall be liable for damages to any person injured upon any of the streets, avenues, alleys or sidewalks of the city, the person so injured, or some one in his behalf, shall give the mayor or city council notice in writing of such injury, within thirty days after the same has been received, stating in such notice when, where and how

the injury occurred, and the extent thereof." Here is a clear and positive legislative recognition of the proposition that the city may be liable for injuries occasioned by defective streets and sidewalks.

There will doubtless be instances where it will be necessary, as a condition precedent to a recovery from the city, to bring sufficient knowledge of the imperfect street or sidewalk home to the proper municipal authorities. *City of Denver v. Dean, supra.* But with such considerations we are not concerned in the present case; nor do we deem it necessary to marshal decisions and further prolong this opinion in disposing of the specific question presented. The judgment of the court below is affirmed.

*Affirmed.*